IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>LACEE TUTTLE,<br><br>Defendant. | 8:20-CR-141<br><br>MEMORANDUM AND ORDER ON MOTION TO VACATE UNDER 28 U.S.C. 2255 |

### I.   INTRODUCTION

Defendant Lacee Tuttle has filed a *pro se* Motion to Vacate Under 28 U.S.C. § 2255. Filing 194. In her Motion, Tuttle raises four grounds for relief: (1) ineffective assistance of counsel rendered her plea of guilty not knowing, intelligent, and voluntary; (2) numerous other alleged deficiencies in her counsel's performance; (3) violation of her Fourth Amendment rights; and (4) alleged prosecutorial misconduct and violation of her speedy trial right. Filing 194 at 4–10. This matter is before the Court to conduct an initial review pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings and 28 U.S.C. § 2255(b). For the reasons stated herein, the Court finds that it "plainly appears" that Tuttle is not entitled to relief and denies her Motion. The Court will not issue a certificate of appealability.

### II.   BACKGROUND

Early in the morning on July 13, 2019, Santee Sioux Police Officer William Blevins stopped at the Ohiya Casino Resort (the "Casino") in the Santee Sioux Reservation in Nebraska. Filing 63 at 12—21. A Casino security officer approached Officer Blevins explaining that a bagged, white substance on the Casino floor had been discovered. Filing 63 at 121. Review of surveillance footage showed a woman, later identified as Tuttle, exiting her car at the Casino and

1

dropping two baggies from her pocket as she walked to the Casino. Filing 63 at 13–14, 17–18, 62, Supp. Ex.[1] 2 at 0:58–2:41; Supp. Ex. 6 at 0:05–0:12. The substance in these bags was later identified as methamphetamine. Filing 63 at 16, 124–25; Filing 172 at 7. While being questioned by law enforcement at the Casino, Tuttle attempted to dispose of a metal marijuana pipe and a glass methamphetamine pipe but was caught. Filing 63 at 20–22, 127; Supp. Ex. 1 at 2; Supp. Ex. 2 at 4:50–7:45; Supp. Ex. 7 at 0:30–3:15. A later search of Tuttle's vehicle by another law enforcement officer, Officer Mousseau, uncovered three additional baggies of methamphetamine, drug paraphernalia, $933 in cash, a pill bottle, and various pills including Lorazepam, Alprazolam, and oxycodone. Filing 63 at 27–31, 91; Supp. Ex. 1 at 2–3; Supp. Ex. 9:30–23:00; Supp. Ex. 4 at 24:00–42:00. Laboratory testing found that the methamphetamine in Tuttle's possession totaled approximately 20.54 grams.

In the early morning hours of October 22, 2019, police officers in Norfolk, Nebraska, discovered Tuttle in a truck in a SEARS parking lot with two males. Filing 172 at 7. Tuttle had an active warrant for her arrest for theft. Filing 172 at 7. When officers told her to put her hands behind her back, Tuttle attempted to dispose of a clear plastic baggie with methamphetamine. Filing 172 at 7. A subsequent search of the truck located Tuttle's purse, which had a large clear plastic baggie containing methamphetamine, a scale, small empty clear plastic baggies, a black marker, a clear plastic baggie with marijuana, and a glass pipe with a crystalline substance. Filing 172 at 7.

The United States issued, and a magistrate judge signed, a criminal complaint and warrant against Tuttle for possessing a controlled substance with intent to distribute. Filing 1. On May 21, 2020, law enforcement arrested Tuttle and discovered a phone on her person. A search of the phone

---

[1] "Supp. Ex." refers to exhibits offered at Tuttle's suppression hearing.

revealed messages from Tuttle to other individuals about selling and manufacturing methamphetamine. Filing 172 at 8–9.

Based on these facts, a grand jury issued a four-count indictment against Tuttle. Filing 21. The Indictment charged Tuttle with (1) possession with intent to distribute five grams or more of methamphetamine at the Casino; (2) evidence tampering related to her discarding her two drug pipes at the Casino while being questioned by law enforcement; (3) possession with intent to distribute five grams or more of methamphetamine when Tuttle was discovered at the SEARS parking lot; and (4) evidence tampering related to her discarding a bag containing methamphetamine when arrested by law enforcement at the SEARS parking lot. Filing 21 at 1–2.

On September 21, 2020, Tuttle filed a motion to suppress, targeting the evidence seized at the Casino. Filing 41. After finding initial success before the magistrate judge, the Court denied her motion. Filing 79. The day before trial, Tuttle entered into a plea agreement with the Government and pleaded guilty to an information charging her with possessing with intent to distribute a mixture containing methamphetamine. Filing 114; Filing 118; Filing 119 (Text Minute Entry).

Prior to sentencing, Tuttle's counsel moved to withdraw. Filing 129. After not showing up to the initial hearing scheduled before the magistrate judge for that motion, Tuttle appeared before the magistrate judge on December 7, 2021. Filing 133 (Text Minute Entry). During that hearing, Tuttle made an oral motion to withdraw her guilty plea. Filing 133 (Text Minute Entry); Filing 134 (audio file). The magistrate judge denied both motions. Filing 133 (Text Minute Entry); Filing 134 (audio file).

Soon after the hearing, a petition against Tuttle was filed for violating the terms of her release, which alleged that Tuttle was using drugs and associating with individuals who were using

3

drugs. Filing 135. Tuttle appeared before the magistrate judge, who permitted Tuttle to continue her presentence release after she admitted to the violations.² Filing 143 (Text Minute Entry); Filing 144.

On January 11, 2022, Tuttle again moved to withdraw her guilty plea and her counsel moved to withdraw as her attorney. Filing 164; Filing 165. Prior to sentencing, the probation officer informed the Court that Tuttle had not met the conditions of her release because she had continued to use methamphetamine while on release, associated with people using illegal substances, and failed to report for drug testing or provide a sample for drug testing. Filing 167 at 1. At sentencing on January 15, 2022, the Court heard argument on the motions. Tuttle struggled to come up with any deficiencies in her counsel's performance and did not provide a legally sufficient justification for withdrawing her guilty plea. Filing 182 at 3–15. The Court denied both motions and proceeded to sentencing. Filing 182 at 10–15. Upon the Government's objection, the Court denied Tuttle a three-level reduction under the sentencing guidelines for acceptance of responsibility based on her post-plea conduct and sentenced her to 71 months incarceration, which was below her guidelines of 77 to 96 months. Filing 182 at 54, 72–73.

Tuttle appealed her conviction to the Eighth Circuit Court of Appeals, arguing that the Government breached her plea agreement by requesting that she be denied acceptance of responsibility. Filing 177; *United States v. Tuttle*, 63 F.4th 673 (8th Cir. 2023). If the Eighth Circuit had agreed with this argument, Tuttle could have challenged the Court's decision to deny her a downward adjustment for acceptance of responsibility and appealed alleged procedural errors the Court committed at sentencing. *See Tuttle*, 63 F.4th at 675. In its March 22, 2023, opinion, the Eighth Circuit rejected Tuttle's argument and found that the Government had not breached Tuttle's

---

² The Government moved to revoke the magistrate judge's order, but the Court denied it as moot at sentencing given the undersigned made the long-overdue order to take Tuttle into immediate custody.

plea agreement. *See id.* at 676–77. Because the agreement remained in force, the waiver in Tuttle's plea agreement prevented her from arguing issues related to her ultimate sentence. *See id.* at 677.

Shortly after the Eighth Circuit issued its Mandate, Tuttle filed the pending Motion to Vacate Under 28 U.S.C. § 2255 on July 27, 2023. Filing 194. In the Motion, Tuttle brings four grounds for habeas relief: (1) ineffective assistance of counsel rendered her plea of guilty as not knowing, intelligent, and voluntary; (2) numerous alleged deficiencies in her counsel's performance; (3) violation of her Fourth Amendment rights; and (4) alleged prosecutorial misconduct and violation of her speedy trial right. Filing 194 at 4–10.

### III. ANALYSIS

#### A. Applicable Standards

Tuttle brings her Motion pursuant to 28 U.S.C. § 2255, which permits federal prisoners to ask the sentencing court to "vacate, set aside, or correct" a sentence upon a showing that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a). "Section 2255 is an outgrowth of the historic habeas corpus powers of the federal courts as applied to the special case of federal prisoners." *Jones v. Hendrix*, 143 S. Ct. 1857, 1865 (2023); *see also Odie v. United States*, 42 F.4th 940, 944 (8th Cir. 2022) ("Section 2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." (internal quotation marks omitted) (quoting *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011))). Relief under § 2255 is limited, as it "does not encompass all claimed errors in conviction and sentencing." *Meirovitz v. United States*, 688 F.3d 369, 370 (8th Cir. 2012) (quoting *Sun Bear*, 644 F.3d at 704).

The judge receiving a § 2255 motion to vacate must first determine if "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." *See* Rule 4(b) of the Rules Governing Section 2255 Proceedings. "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the Court must order the United States to respond and consider holding a hearing. 28 U.S.C. § 2255(b); *see also* Rules 4(b) and 8(a) of the Rules Governing Section 2255 Proceedings. A court cannot accept a petitioner's allegations as true if "they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Walker v. United States*, 810 F.3d 568, 580 (8th Cir. 2016).

### B.  Ground One

The Court will address each of Tuttle's grounds of habeas relief in order, beginning with her claim in ground one that her counsel's deficient performance rendered her guilty plea unknowing and involuntary. According to Tuttle, it was always her desire to go to trial, and she entered into a plea agreement after considering it for three days without fully understanding the "adverse effects" of the agreement, specifically, the waiver of her right to appeal the denial of her motion to suppress. Filing 194 at 4–5. Tuttle accuses her counsel of making "misleading statements and threats" to get her to sign the agreement.³ Filing 194 at 5. She further asserts that the factual basis for the plea was "coerced by counsel." Filing 194 at 4. Finally, Tuttle claims that the Court's refusal to allow her to withdraw her guilty plea violated Federal Rule of Criminal Procedure 11(d)(2)(B), which permits a defendant to withdraw a guilty plea if she "can show a fair and just reason" for doing so. Filing 194 at 4; Fed. R. Crim. P. 11(d)(2)(B).

---

³ Some of these allegations actually appear in ground two of Tuttle's Motion, but because they all involve Tuttle's guilty plea and plea agreement, the Court finds that in the interest of clarity and brevity that it is best to address all allegations about her counsel's performance with respect to Tuttle pleading guilty together.

Because Tuttle's claim involves ineffective assistance of counsel, the Court will briefly outline the law governing ineffective assistance claims. A criminal defendant's Sixth Amendment right to counsel is violated when defense counsel fails to provide effective assistance. *See Strickland v. Washington*, 466 U.S. 668, 684–86 (1984). "To prove ineffective assistance of counsel, [Tuttle] must show (1) [her] attorney's performance fell below an objective standard of reasonableness, and (2) a reasonable probability that, but for that deficient performance, the result of the proceeding would have been different." *Love v. United States*, 949 F.3d 406, 409 (8th Cir. 2020) (citing *Strickland*, 466 U.S. at 688). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome' or 'a substantial, not just conceivable, likelihood of a different result.'" *Meza-Lopez v. United States*, 929 F.3d 1041, 1044–45 (8th Cir. 2019) (quoting *United States v. Frausto*, 754 F.3d 640, 643 (8th Cir. 2014)).

The Court begins with Tuttle's argument that her guilty plea was not knowing and voluntary because she entered into a plea agreement shortly before trial after considering it for three days, her counsel did not adequately explain the plea agreement's "adverse effects," and her counsel "coerced" the factual basis for her plea. A criminal defendant may attack the knowing and voluntary nature of her plea in a collateral proceeding by arguing that her counsel rendered ineffective assistance. *See McMann v. Richardson*, 397 U.S. 759, 770–71 (1970) ("Whether a plea of guilty is unintelligent . . . depends . . . on whether the advice [of counsel] was within the range of competence demanded of attorneys in criminal cases."); *Walker*, 810 F.3d at 577–78 (evaluating whether advice on sentencing issues by counsel made plea involuntary). When advising defendants on whether to plead guilty, counsel must provide "reasonably informed advice on material issues." *Mayfield v. United States*, 955 F.3d 707, 711 (8th Cir. 2020). To establish prejudice, the petitioner must show a reasonable probability that, but for her counsel's incorrect advice, she would not have

7

pleaded guilty and instead would have proceeded to trial. *See Covington v. United States*, 739 F.3d 1087, 1090 (8th Cir. 2014).

Tuttle entering into the plea agreement after considering it for three days has no bearing on her counsel's performance. She makes no allegations, and there is no evidence in the record, that this was her counsel's fault.[4] Nor do Tuttle's allegations that her counsel "coerced" the factual basis for her plea or failed to adequately explain the effect of signing the plea agreement entitle her to relief. The record in this case—particularly, Tuttle's change-of-plea hearing—contradicts her allegations. *See Walker*, 810 F.3d at 580 (holding that allegations in a habeas petition "cannot be accepted as true" when "they are contradicted by the record"); *Thompson v. United States*, 872 F.3d 560, 566 (8th Cir. 2017) (reiterating that a defendant's representations at a change-of-plea hearing "pose a formidable barrier" to allegations in a habeas petition). At her change-of-plea hearing, Tuttle stated that she had discussed her criminal offense and potential defenses with her counsel and was satisfied with her counsel's representation and advice, that she fully discussed her plea agreement with her counsel, and that she understood the terms of her plea agreement and voluntarily signed it. Filing 124 at 11, 18–19. When asked by the magistrate judge if anyone threatened her to sign the agreement, Tuttle said, "No." Filing 124 at 20. The magistrate judge

---

[4] To the extent that Tuttle is arguing that, somehow, her considering a plea agreement for three days and entering into it the day before trial rendered it not knowing and voluntary, not only does she provide no evidence that this time frame made her plea not knowing and voluntary, but she never raised this issue on appeal, meaning she has procedurally defaulted this issue. *See Jennings v. United States*, 696 F.3d 759, 763 (8th Cir. 2012) ("[A] petitioner may not raise an issue before the district court for the first time in a § 2255 motion if the issue was not presented on direct appeal from the conviction."). Tuttle does not claim that her counsel was ineffective for failing to raise this issue on appeal, nor provide any other explanation for why she did not raise this issue on appeal. *See Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (explaining how "cause and prejudice" will allow a petitioner to overcome procedural default). Further, the Court notes that the magistrate judge asked Tuttle at her change-of-plea hearing if she had "a full opportunity to consider" the plea offer and if she "voluntarily sign[ed] the written plea agreement," to which Tuttle stated yes. Filing 124 at 19–20. *See United States v. Goodson*, 569 F.3d 379, 382–83 (8th Cir. 2009) (holding guilty plea was knowing and voluntary based on statements the defendant made at his change-of-plea hearing); *United States v. De Avila-Muro*, 118 F. App'x 100, 101 (8th Cir. 2004) ("The plea hearing transcript, which reveals the court's careful and lengthy questioning of [the defendant], supports that [the defendant's] guilty plea was knowing and voluntary."). And, Tuttle was properly informed about the rights she was giving up by pleading guilty, including her ability to challenge the manner in which law enforcement discovered evidence of her criminal activity.

informed Tuttle that by pleading guilty she was "giv[ing] up [her] right to challenge the manner in which the government obtained its evidence against [her]," to which Tuttle responded that she understood. Filing 124 at 21–22. Tuttle then stated that she freely and voluntarily gave up that right. Filing 124 at 22. When the Government provided the factual basis for the offense, Tuttle at first quibbled with the "intent to distribute" element of her offense because she "would have shared" the narcotics in her possession.[5] Filing 124 at 25. After a brief discussion with counsel, Tuttle agreed with the factual basis. Filing 124 at 15–26.

Following Tuttle's change-of-plea hearing, Tuttle attempted to withdraw her guilty plea during a hearing before the magistrate judge regarding her counsel's motion to withdraw as her counsel. Filing 129; Filing 133 (Text Minute Entry). At the hearing, Tuttle stated that her counsel advised her several times that she should sign the plea agreement with the Government because she was highly likely to be found guilty at trial. Filing 134 (audio file) at 6:50–7:25. Based on this advice, Tuttle agreed to plead guilty pursuant to a plea agreement with the Government. Filing 134 (audio file) at 6:50–7:25.

In light of the record, Tuttle's vague allegations that her counsel did not adequately explain the plea agreement's "adverse effects," that he made "misleading statements and threats" to get her to plead guilty, and "coerced" the factual basis for her plea are without any basis. *See Walker, 810 F.3d at 580.* The record establishes that Tuttle's counsel explained the plea agreement with Tuttle, that Tuttle knew what rights she was waiving by signing the agreement and pleading guilty, and that she understood the factual basis for her offense. At no time during the change-of-plea hearing did Tuttle inform the magistrate judge that her counsel did not explain what rights she was

---

[5] The magistrate judge correctly informed Tuttle that, under the law, sharing narcotics satisfies the "intent to distribute" element of her offense. Filing 124 at 123. *See United States v. Jones*, 586 F.3d 573, 576 (8th Cir. 2009) ("Giving drugs to others, even without receiving money in exchange, is distributing drugs under § 841(a)(1)." (quoting *United States v. Ironi*, 525 F.3d 683, 689 (8th Cir. 2008))).

9

giving up. Despite her awareness of the rights she was waiving, Tuttle proceeded to plead guilty. Her counsel advising her to take the plea offer constitutes sound advice, not coercion. The Court concludes that the record firmly establishes that Tuttle's counsel acted reasonably in advising her about the plea agreement and the factual basis of her offense. Consequently, Tuttle's argument that the Court unlawfully prevented her from withdrawing her plea is without merit. *See Goodson*, 569 F.3d at 382 ("When a defendant has entered a knowing and voluntary plea of guilty at a hearing at which he acknowledged committing the crime, the occasion for setting aside a guilty plea should seldom arise." (quoting *United States v. Morrison*, 967 F.2d 264, 268 (8th Cir. 1992)); *United States v. Smith*, 422 F.3d 715, 724 (8th Cir. 2005) (rejecting argument that the court should have allowed the defendant to withdraw his guilty plea based on alleged unawareness of the consequences of pleading guilty because the court properly informed the defendant that he was giving up his right to pursue a suppression motion at the change-of-pea hearing and "a belated desire to appeal a suppression ruling is not [a] fair and just reason warranting the withdrawal of a plea of guilty"). Therefore, Tuttle's plea was knowing and voluntary. Ground one of Tuttle's Motion is denied.

### C. Ground Two

In her second ground for habeas relief, Tuttle provides a litany of criticisms against her counsel's performance. In general, these arguments fall into three categories: (1) ineffectiveness with regard to her right to a speedy trial; (2) ineffectiveness during Tuttle's motion to suppress; and (3) ineffectiveness during the sentencing phase.[6] Filing 194 at 5–7. The Court addresses each category in turn.

---

[6] The Court discussed Tuttle's allegations related to ineffectiveness during the plea phase in the previous section.

    *1. Speedy Trial*

Tuttle alleges that her counsel knew she wanted to go to trial, that trial was rescheduled "numerous times," and that her counsel "allowed to a continuance in early 2021" at the Government's request so that it could prepare its witnesses, all of which she claims violated her speedy trial right. Filing 194 at 5. The Court assumes that Tuttle is referring to the Government's June 9, 2021, motion to continue that her counsel did not oppose. The Government filed the motion because a key witness was likely unavailable due to a preplanned trip with his mother, who was suffering from serious medical issues. Filing 85. After making an "ends of justice" finding, the Court continued trial to August 17, 2021. Filing 90.

Tuttle's counsel's decision not to oppose the continuance was not unreasonable. The Court made an "ends of justice" finding when granting the continuance, meaning that the Speedy Trial Act was tolled, so any objection from Tuttle's counsel would have been meaningless. *See United States v. Williamson*, 319 F. App'x 734, 737 (10th Cir. 2009) (holding that counsel was not ineffective because "the court adequately explained its reason for the continuance such that an objection would have been futile."). Furthermore, Tuttle was not prejudiced by her counsel's decision not to object. Again, the Speedy Trial Act was tolled by the Court's "ends of justice" finding, and Tuttle fails to provide any reason to believe that the result of her criminal proceeding would have been any different had counsel made such an objection. *See Meza-Lopez*, 929 F.3d at 1044–45 (explaining that a habeas petitioner shows prejudice when there is a "reasonable probability" of a different result). If Tuttle's counsel had objected, the Court would have overruled her counsel's objection or the Court would have sustained it and denied a continuance. Either way, Tuttle would have been presented with the same option of pleading guilty pursuant to a plea agreement prior to trial or going to trial. Given that her circumstances would have been

substantially the same regardless of if a continuance was granted or not, Tuttle cannot show "a probability sufficient to undermine confidence in the outcome or a substantial, not just conceivable, likelihood of a different result." *Id.* (internal quotation marks omitted) (quoting *Frausto*, 754 F.3d at 643).

   2.   *Motion to Suppress*

Tuttle makes two allegations about her counsel's supposed ineffectiveness regarding her motion to suppress. Tuttle faults her counsel for failing to offer evidence that Officer Mousseau—a law enforcement officer who discovered narcotics in Tuttle's possession at the Casino and searched her vehicle—admitted that he took the narcotics in Tuttle's possession home first before testing them the following day. Filing 194 at 6. Tuttle further alleges, albeit vaguely, that her counsel "failed to present evidence showing prior misconduct of Officer Mousseau." Filing 194 at 6.

During the pretrial phase, Tuttle filed a motion to suppress evidence obtained when law enforcement searched her and her car at the Casino. Filing 41. Officer Mousseau testified at Tuttle's suppression hearing about his investigation at the Casino, his interactions with Tuttle, and his decision to search Tuttle's vehicle. Filing 63 at 11–57. Officer Mousseau's body cam footage was also admitted as an exhibit during the hearing. *See* Supp. Ex. 2; Supp. Ex. 3; Supp Ex. 4; Supp. Ex. 5.

A transcript of Tuttle's suppression hearing easily shows that her counsel's representation fell within the "wide range of professionally competent assistance." *Buck v. Davis,* 580 U.S. 100, 118 (2017) (quoting *Strickland,* 466 U.S. at 690). Tuttle's counsel thoroughly attacked Officer Mousseau's credibility by highlighting inconsistencies between his police report and his affidavit, crossing him about being removed from his position after an investigation concluded he lied during

12

a judicial proceeding, and questioning his motive for opening the trunk of Tuttle's vehicle. Filing 63 at 62–63, 68–69, 74–76, 82–84. Her counsel's assault on Officer Mousseau's trustworthiness was so effective that the magistrate judge in this case found parts of his testimony not credible. Filing 73 at 16. Tuttle's counsel was not required to introduce extrinsic evidence weighing on Officer Mousseau's credibility to provide reasonable representation.

As to Tuttle criticizing her attorney for failing to adduce evidence that Officer Mousseau took the narcotics home with him and tested them the next day, she misunderstands the purpose of her suppression hearing. While Officer Mousseau taking evidence home before testing it relates to chain-of-custody, it has nothing to do with whether law enforcement violated the Fourth Amendment. In any event, chain-of-custody issues rarely mandate exclusion of evidence. *United States v. Manning*, 738 F.3d 937, 944 (8th Cir. 2014) ("A defect in the chain of custody 'typically affects the weight of the evidence rather than its admissibility.'" (*United States v. Brumfield*, 686 F.3d 960, 965 (8th Cir. 2012))).

Furthermore, regardless of if Tuttle's counsel was ineffective for these supposed failings, there was no prejudice. The Court's memorandum and order denying Tuttle's Motion to Suppress did not rely on Officer Mousseau's testimony, but rather on body cam and surveillance footage and the testimony of other individuals. Filing 79. There is no reasonable probability that, had counsel introduced evidence of Officer Mousseau's alleged "misconduct" or brought up issues with the chain-of-custody, Tuttle's Motion to Suppress would have been successful. *See Meza-Lopez*, 929 F.3d at 1044–45.

3. *Sentencing*

Tuttle's remaining allegations in ground two of her Motion concern her counsel's representation during the sentencing phase of trial. Distilled, Tuttle faults her attorney for not

13

telling her when to meet with the probation officer drafting the presentence investigation report (PSR) for an interview, not contesting several allegations in the PSR, failing to represent her when she tried to withdraw her plea, and not providing her the transcript of the sentencing hearing.

Many of these alleged shortcomings can be dealt with swiftly. Assuming that Tuttle was unable to meet with the officer drafting the PSR, she does not explain what she would have said during the interview and how it would have helped her at sentencing. Her claim that her counsel "failed to represent" her when she moved to withdraw here guilty plea is false because her attorney filed the motion for her and, regardless, there was no chance that the Court was going to let Tuttle withdraw her plea. Filing 164. Tuttle's complaint that her counsel has not given her a copy of the sentencing transcript is not a basis for habeas relief.

That leaves Tuttle's arguments that her counsel failed to contest several issues at sentencing, including the "charges" in the PSR attributed to her, Tuttle's pre-sentence misconduct, and the drug quantity. The first argument fails for lack of prejudice, the second argument fails for lack of ineffectiveness, and the third argument fails because it is false. Tuttle, quite incredibly, claims that the "charges" in the PSR were committed by another person named "Lacee Tuttle" and are wrongly attributed to her in the PSR. Filing 194 at 7. But convictions, not charges, increase a defendant's criminal history category under the guidelines. *See* U.S.S.G. § 4A1.1. The Court never referenced Tuttle's other charges when sentencing her. Therefore, her counsel not contesting the charges in the PSR did not prejudice her. *See Jeffries v. United States*, 721 F.3d 1008, 1014 (8th Cir. 2013) (holding that prejudice at sentencing requires a petitioner to "demonstrate a reasonable probability that [her] sentence would have been different . . . ."). Second, Tuttle's counsel could not have argued against the Court considering Tuttle's pre-sentence misconduct while on release because Tuttle admitted to all the misconduct at a hearing prior to sentencing. Filing 152 at 3–5.

*See Walker*, 810 F.3d at 580 (holding that allegations in a habeas petition "cannot be accepted as true" when "they are contradicted by the record"). Tuttle's counsel is not required to make frivolous arguments at sentencing. *See Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994) ("[C]ounsel's failure to advance a meritless argument cannot constitute ineffective assistance.").

Finally, Tuttle's claim that her counsel did not object to the drug quantity attributed to her is false. In his objections to the presentence investigation report, Tuttle's counsel objected to the PSR not multiplying the net weight of methamphetamine by its tested purity and contended that Tuttle did not intend to sell some of the methamphetamine found in her possession. Filing 154 at 1–2. Ultimately, the Government agreed with Tuttle that her base offense level should be 24, not 26 as stated in the presentence investigation report. Filing 154 at 2; Filing 158 at 1 n.1; Filing 172 at 10. Tuttle's base offense level could go no lower because she stipulated in her plea agreement that she possessed approximately 13 grams of methamphetamine, which when at least at 80% purity produces a base offense level of 24 under the sentencing guidelines. Filing 118 at 2. *See United States v. Kugmeh*, 932 F.3d 1195, 1197 (8th Cir. 2019) ("A defendant may not challenge an application of the Guidelines to which he agreed in a plea agreement (unless he proves the agreement invalid or succeeds in withdrawing from it)." (quoting *United States v. Barrett*, 173 F.3d 682, 684 (8th Cir. 1999))); *Barrett*, 173 F.3d at 684 (holding that the defendant's objection to the court's drug quantity finding failed when the defendant stipulated to the amount of drugs involved in the criminal conspiracy); U.S.S.G. §2D1.1(c)(8) (providing a base offense level of 24 for possessing between at least 5 grams but less than 20 grams of methamphetamine (actual)). The record clearly shows her counsel successfully objected to the drug quantity. Tuttle's claim to the contrary is false.

### D. Ground Three

Ground three of Tuttle's Motion argues that her Fourth Amendment rights were violated when Officer Mousseau searched her vehicle at the Casino. Filing 194 at 8. Tuttle did not appeal this issue in her direct appeal, however. While Tuttle can raise issues with her counsel's representation for the first time in a habeas proceeding, she cannot bring in other issues that were not part of her direct appeal. *See Jennings v. United States*, 696 F.3d 759, 763 (8th Cir. 2012) (holding that a habeas petition is required to first raise an issue on direct appeal); *Massaro v. United States*, 538 U.S. 500, 509 (2003) ("[F]ailure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255."). The Court can only consider this procedurally defaulted issue if Tuttle shows both "cause" and "prejudice" or "actual innocence." *Jones v. United States*, 39 F.4th 523, 525 (8th Cir. 2022). Tuttle does not assert she is actually innocent, so the Court will limit its analysis to whether she shows cause and prejudice.

"Cause" refers to an impediment to raising an issue on appeal that was not within the petitioner's control. *See Coleman v. Thompson*, 501 U.S. 722, 753 (1991). Prejudice requires a showing that the alleged errors "worked to [the petitioner's] actual and substantial disadvantage" and "infect[ed]" the entire proceeding "with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). Assuming that Tuttle's allegation that her attorney refused to raise the issue constitutes cause, she does not show prejudice. Tuttle knowingly and voluntarily pleaded guilty, which prevented her from asserting her Fourth Amendment argument on appeal. *United States v. Pierre*, 870 F.3d 845, 848 (8th Cir. 2017) ("A valid guilty plea . . . waives all suppression issues not expressly reserved by a conditional plea[.]"). Tuttle's plea agreement also waived her right to appeal except on the issue of whether her counsel was ineffective. Filing 118

16

at 5. The Eighth Circuit would have rejected any argument directed at the search of her vehicle on theses bases. *See Blaine v. United States*, No. 4:17-CV-04138-KES, 2019 WL 3423523, at *3 (D.S.D. July 30, 2019) (concluding that the habeas petitioner could not show prejudice when the Eighth Circuit would have dismissed a Fourth Amendment claim because the petitioner pleaded guilty). It "plainly appears" that Tuttle is not entitled to relief in ground three of her motion.

### E. Ground Four

Tuttle's final ground for habeas relief alleges that her right to a fair and speedy trial were violated, that the prosecutor wrongfully objected to her receiving a three-level downward adjustment for acceptance of responsibility, and that the Court made "bias[ed] comments" at sentencing "due to [the] prosecutors' [sic] misinformation." Filing 194. As to Tuttle not receiving acceptance of responsibility, her counsel raised that point on direct appeal, and Tuttle does not get a mulligan in habeas. *See Thompson*, 872 F.3d at 565 ("[C]laims which were raised and decided on direct appeal cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2255." (alteration in original) (quoting *Davis v. United States*, 673 F.3d 849, 852 (8th Cir. 2012))). Furthermore, the Court supposedly making "bias[ed] comments" purportedly due to the prosecutor's representations provides no basis for relief. Not only has Tuttle procedurally defaulted this claim by failing to raise it in her direct appeal, she also does not point to what comments she finds objectionable, and a review of the sentencing transcript reveals that the Court made no improper statements. Finally, Tuttle procedurally defaulted the supposed violation of her speedy trial right and does not demonstrate cause or prejudice in light of her knowing and voluntary guilty plea. *See Taylor v. United States*, 204 F.3d 828, 829 (8th Cir. 2000) (holding that the petitioner's speedy trial right claim in a § 2255 motion failed because he "waived his right to raise any

17

argument based on a violation of the Speedy Trial Act when he pleaded guilty."). It "plainly appears" that Tuttle is not entitled to relief in ground four of her motion.

### F. Certificate of Appealability

In case Tuttle wants to appeal the Court's denial of her Motion, the Court will rule on whether to issue a certificate of appealability. No appeal may be taken on a § 2255 motion to vacate unless a judge issues a certificate of appealability, which requires the appellant to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(1)–(2). To make "a substantial showing of the denial of a constitutional right" after the district court denies a constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a petition is denied on procedural grounds, a petitioner is entitled to a certificate of appealability if the petitioner "shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

Reasonable jurists would not find the Court's decisions debatable. Tuttle failed to show that her counsel rendered ineffective assistance when advising her about pleading guilty, meaning that her guilty plea was knowing and voluntary. As outlined above, this doomed several of her claims because she could not overcome her procedural default for failing to raise several issues in her direct appeal. As to her other assertions that her counsel was ineffective, reasonable jurists would not find it debatable that they are without merit.

### IV. CONCLUSION

For these reasons, the Court denies Tuttle's § 2255 Motion. Accordingly,

18

IT IS ORDERED:

1. Lacee Tuttle's Motion to Vacate Under 28 U.S.C. § 2255, Filing 194, is denied; and

2. The Court will not issue a certificate of appealability.

Dated this 7th day of August, 2023.

BY THE COURT:

_[signature]_

Brian C. Buescher
United States District Judge

19